UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                          PLAINTIFF

vs.                                                        CRIMINAL ACTION NO. 3:14CR108-JHM

CHRISTOPHER KOSICKI                                                                DEFENDANT

**–** *ELECTRONICALLY FILED* **–**

## SENTENCING MEMORANDUM

Comes the United States of America, through counsel, Assistant United States Attorney Jo E. Lawless, and files its memorandum in support of sentencing in this action currently scheduled for February 1, 2016.

### I. Factual Background

On or about September 24, 2014, Metropolitan Police Department Detective Timothy Palchak was acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force in Washington, D.C. In that capacity, Detective Palchak ("UC") and members of the Task Force entered a social networking site used by persons to communicate with each other. That day, the UC met online with an individual later identified as Raymond Shadburn, who used the internal email system on the website to communicate with the UC. The internal email is a random combination of letters and numbers that linked to Shadbun's actual email address.

During the email exchange with the UC, Shadburn sent several images of child pornography to the UC. The images involved multiple girls. With regard to one child, Shadburn told the UC that he had met another likeminded individual, who lived in Kentucky with the child (11 years old). Shadburn stated that he had had sexual contact with the girl. Shadburn

shared an additional image of child pornography with the UC and stated that the image was taken approximately two weeks prior to their communication. An EXIF data check revealed that the picture had been taken on approximately September 13, 2014, a timeframe consistent with Shadburn's statement to the UC. One of the images Shadburn sent to the UC showed a child performing oral sex on an adult male. Shadburn claimed to be the man in the photo and told the UC, "I hope to see them today when I'm in there [sic] town. But that's if I can make it in time to play on my late lunch."

Shadburn also provided a telephone number to the UC. The two engaged in an extended text conversation. During that text conversation, Shadburn sent additional images of child pornography involving the 11-year-old child. Shadburn also told the UC that he was at work and planning to travel to Kentucky to engage in further sexual activities with the child.

Using a law enforcement database, law enforcement identified the subscriber of telephone number previously provided to the UC as a number assigned to Raymond Shadburn, of Seymour, Indiana. Further investigation revealed Shadburn's email address (used on Craigslist) and subscriber information for that email address through Google, Inc. Additionally, an FBI Analyst utilized publicly available information to determine that Shadburdn's email address was associated with Shadburn's Facebook.com account.

FBI Special Agent Ryan Barrett and Indianapolis Police Detective Darin Odier interviewed Shadburn on September 24, 2014, following his arrest. Shadburn explained that he used the telephone taken from his vehicle to distribute and receive child pornography from other persons he met through Craigslist.com. He stored his collection of child pornography in his telephone and used it to take pictures/videos as well.

Law enforcement officials discovered an HTC cellular telephone in the vehicle Shadburn was driving when law enforcement officers encountered him in Seymour, Indiana, on September 24, 2014.  Shadburn stated that he stored approximately 30 images and videos of child pornography on the phone.

Detective Darin Odier and S/A Barrett interviewed Shadburn again on September 25, 2014.  During that interview, he stated that the image of the 11-year-old girl was produced as a result of meeting a family member of the girl on Craigslist.com.  According to Shadburn, the man and child lived in Louisville, Kentucky.  Shadburn admitted to driving to a residence in Louisville on three occasions and engaging in sexual acts with the child while the man watched as well as taking photographs of the sexual activity.  Shadburd advised that contact information for the man could be found in the cellular phone which was then located in his vehicle.

Law enforcement officials obtained and executed a federal Search Warrant on the cellular telephone.  The information contained on the phone, and verified by Shadburn, identified Christopher Kosicki, as the man with whom Shadburn made arrangements to travel from Indiana to Kentucky for the purpose of engaging in sexual activity with the child.   The sexual activity, according to Shadburn, occurred in Kosicki's residence.  According to Shadburn, Kosicki told the child what to do with Shadburn and watched as Shadburn engaged in sexual activity with the child and took photographs/recorded the activity.  Shadburn stated that while Kosicki watched the child perform oral sex on Shadburn, Kosicki masturbated.

Law enforcement officials obtained and executed federal search and arrest warrants at Kosicki's home on September 25, 2014.  The child depicted in Shadburn's images was present in the home (wearing a t-shirt depicted in one of Shadburn's images that had been shared with the

3

UC). Law enforcement officials seized digital items from the home, including several cellular telephones, USB thumb drives, and a computer. Preliminary examination of the items revealed photographs Kosicki had taken of several children engaged in a sleepover in his home. The EXIF data indicated that the photographs had been taken with an iPhone 4 on June 13, 2014. The furniture and décor in the photographs matched Kosicki's home. During a forensic interview with a child, she identified the children in the photographs (including herself). No child pornography photos were shown to the child.

Several images showed Kosicki placing his naked, erect penis near two sleeping girls' faces/mouths. Other photos showed Kosicki pulling the bathing suit of one child to the side to reveal her pubic area.

Law enforcement officials met with Kosicki under the terms of a proffer agreement. During the proffer, Kosicki reviewed non-pornographic images of a number of children and identified them for law enforcement. He admitted producing child pornography images involving 10 different children. Kosicki advised where a stash of thumb drives containing child pornography was hidden in his home. He also provided information concerning meeting men (other than Shadburn), through Craigslist.com and making arrangements for them to engage in sexual activity with a child, Jane Doe 1. Law enforcement officials began investigating other people involved in the sexual exploitation of Jane Doe 1.

While reviewing the evidence recovered from Kosicki's home (following the proffer session), Detective Odier found videos and still images of Kosicki's sexual abuse of several

children (Jane Does 1-10). Examination of EXIF data of the images revealed the following:

| Victim | Date of production |
| --- | --- |
| Jane Doe 1 | August 25, 2014[1] |
| Jane Doe 2 | June 13, 2014 |
| Jane Doe 3 | June 13, 2014 |
| Jane Doe 4 | September 30, 2012 |
| Jane Doe 5 | December 2, 2012 |
| Jane Doe 6 | May 18, 2013 |
| Jane Doe 7 | August 4, 2013 |
| Jane Doe 8 | May 3, 2014 |
| Jane Doe 9 | June 23, 2014 |
| Jane Doe 10 | August 13, 2014 |

The EXIF data also revealed the type of device used to create the images, (*e.g.*, iPhone, camera, etc.). The images were created with devices that were not manufactured in the Commonwealth of Kentucky.

The materials recovered from the digital storage devices contradicted statements Kosicki had made concerning the extent of his sexual abuse. Counsel for the United States advised defense counsel of the evidence and advised that Kosicki had breached the terms of the proffer agreement. Consequently, counsel for the United States advised that additional charges would be brought against Kosicki, including production of child pornography charges relating to all 10 victims. The child pornography included both still and video recordings and included depictions ranging from digital penetration of a child's vaginal area by adult men, oral sex on a child by adult men, a child performing oral sex on adult men, masturbation with a sharpie marker, Kosicki inserting his erect penis into a child's vagina, Kosicki masturbating near children's faces (while they slept), Kosicki exposing the genital areas of children, Kosicki's naked, erect penis near

---

[1] There were multiple dates of production concerning Jane Doe 1 over the course of several years. The sexual abuse began when she was approximately eight. At the time of Kosicki's arrest in August 2014, Jane Doe 1 had turned 11 the preceding June.

children's faces, and Kosicki placing a syringe near children's mouths.[2]

Law enforcement officials began advising the parents/guardians of the children depicted in Kosicki's images. Arrangements were made for forensic interviews of the children as well as medical examinations.

At the same time, law enforcement officials began search for the other men involved with Kosicki's sexual exploitation of children. Those investigative efforts led to the execution of a federal search warrant at the home of Howard Key Chambers. In 2013, Kosicki met Chambers *via* Craigslist.com. The two communicated online and, eventually, Chambers travelled from Oldham Comity, Kentucky, to Louisville, Kentucky, to meet Kosicki at Kosicki's residence. When Chambers arrived, Kosicki introduced a 1 0-year-old child into the scenario and offered her to Chambers for the purpose of engaging in sexual activity. After the initial encounter, Chambers and Kosicki continued to communicate with each other, using the Internet, until August 2014.

During those communications, the two made arrangements for Chambers to come to Kosicki's residence to engage in sexual activity with the child, including near the time, and after, she turned 11. Sexual activity between an adult and a child under the age of 12 is a criminal offense in the Commonwealth of Kentucky.

According to his post-*Miranda* recorded statement, Chambers travelled to Kosicki's hone to engage in sexual activity with the child between six and eight times from 2013 until August 2014. Kosicki and Chambers helped each other entice, harbor, provide, obtain, and maintain a person that had not attained the age of 14 years who was caused to engage in commercial sex acts, that is, any sex act, on account of which anything of value is given to and received by any person.

---

[2] Kosicki told Shadburn and law enforcement officials that he spread ejaculate on a pizza, fed it to children, and recorded them eating it. He also told law enforcement officials that he collected his ejaculate and used a syringe to place it in children's mouths.

According to Chambers' statement,[3] on several occasions, Chambers gave Kosicki money after engaging in sexual activity with the child. On at least one occasion, he gave money directly to the child after engaging in sexual activity with her. Additionally, on one occasion, Kosicki photographed Chambers engaging in sexual activity with the child. That image was recovered from the digital storage devices in Kosicki's home. Chambers identified himself as the man shown in the photo.

## II.  Crimes of Conviction

Kosicki pled guilty to the charges in the Indictment. The Indictment contained 15 charges against Kosicki, including offenses of aiding and abetting interstate travel to engage in sexual activity with a child under the age of 12 (three counts), production of child pornography (10 victims), aiding and abetting the sex trafficking of a minor. (18 U.S.C. §§ 2, 2241(c), 2251(a), 2251(e), 1591(a)(1), 1591(b)(1), and 1591(e)(3)). He pled guilty pursuant to a written Plea Agreement under 18 U.S.C. § 924(c)(1)(C).

## III.  Sentencing Guidelines calculations

Even in the post-*Booker* sentencing era, the Sixth Circuit Court of Appeals has reiterated the continued importance of the United States Sentencing Guidelines in the federal sentencing process. *See United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008). The *Anderson* court opined that

> [a]t the outset, we note that it is unclear that an error in determining the Guidelines recommendation can ever be considered harmless post- *Gall*. *Gall* clearly directed the focus of sentencing courts to the Guidelines. For instance, the Court held that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  128 S.Ct. at 596. '[T]he Guidelines should be the starting point and the initial benchmark,' so as to ensure fair sentencing

---

[3] The forensic interview of the child confirmed the exchange of money between Chambers and Kosicki as well as Chambers and the child.

>'administration and to secure nationwide consistency.' *Id.* Furthermore, the Court held, '[t]he fact that 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.' *Id.* at 596 n. 6. If the district court decides to sentence a defendant outside of the Guidelines range, then the district court 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. [The Court] f[ou]nd it uncontroversial that a major departure should be supported by a more significant justification than a minor one.' *Id.* at 597. On appeal, the Courts of Appeals 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range .... or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.' *Id.*

*Id.* at 329. The *Anderson* court further noted that such a focus on the Guidelines "is consistent with the Court's other recent sentencing precedent" and went on to reference the decisions in *United States v. Booker*, 543 U.S. 220, 245-46, (2005), *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007), and *Rita v. United States*, 127 S.Ct. 2456, 2468 (2007), to include the opinions' respective references to the role of the Guidelines. *Id*.

The United States originally had no objections to the Guideline calculations set out in the Presentence Investigation Report (PSR). However, in December 2015, counsel for the United States, Louisville Metro Police Department Crimes Against Children Unit Detective (FBI TFO) Brian Wright, and defense counsel met with Kosicki for a defense-requested proffer session. After the conclusion of the proffer session, Grayson County Detention Center officials intercepted correspondence between Kosicki and another inmate in the institution. A redacted[4] copy of the correspondence (including the "story") is filed as Exhibit A. While it is true that Kosicki pled guilty to the charges against him and has not put the United States to the burden of proof at trial, his post-plea conduct – as evidenced in Exhibit A – is inconsistent with an acceptance of responsibility

---

[4] The document is redacted to protect the privacy interests of minor victims and individuals who have not been charged with any criminal conduct.

for his crimes. *See, e.g.,* U.S.S.G., 3E1.1, Commentary Application Note 3.

The written communication demonstrates his cavalier attitude toward the criminal justice system, including a description of the proffer process as simply a "gettaway (sic) with a crime free car." These are not the words of a man truly accepting of responsibility for his criminal actions. Kosicki's use of the names of actual child victims in the correspondence shared with another inmate underscores his lack of concern for the privacy interests of the children. His reference to the sexual abuse of another victim – using her name – is made in a bragging manner. It not only shows a lack of concern for her privacy, but serves as further victimization. The reference to the child victims by name and the stated desire to get the other inmate a copy of Kosicki's PSR, evidences his complete disregard for the privacy interests of the child victims as well as the Court's Protective Order concerning the protection of those privacy interests.

For these reasons, Kosicki should not receive the benefit of the three-level reduction for acceptance of responsibility. The United States acknowledges that the total adjusted Sentencing Guidelines' offense level is 43, regardless of whether the adjustment for acceptance of responsibility is give. This is so, because an offense level of 43 is the cap.[5]

## IV. Criminal History

The United States concurs with the criminal history calculation as set out in the PSR.

---

[5] In actuality, when all of the enhancements allowed for under the Sentencing Guidelines are applied in the case at bar, the offense level is 54. However, the Sentencing Guidelines provide for an offense level cap of 43.
"In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. . . . An offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. Chapter 5 Pt. A, Application Note 2.

V. Statutory Factors

### A. Minimum and maximum penalties

The charges to which Kosicki pled guilty carry a combined minimum term of imprisonment of 30 years, a combined maximum term of life imprisonment, and a combined maximum fine of $3,750,000.00. The term of Supervised Release for each count is not less than five years and the maximum is life.

### B. 18 U.S.C. § 3553(a) factors

As noted above, the total Sentencing Guidelines' offense level is 43.[6] The Criminal History Category is correctly calculated at I. Consequently, the recommended punishment range is life in prison.

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). The United States respectfully requests that the Court impose a substantial sentence of imprisonment followed by a life term of Supervised Release.

Title 18, United States Code, section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[6] *Id*.

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
    . . .

  (5) any pertinent policy statement--
    . . .

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

  Kosicki stands convicted of very serious child exploitation offenses. Within the range of criminal acts perpetrated upon children, his conduct is at a very highest level of the spectrum. The sheer number of victims sets him apart from all but one other defendant previously prosecuted for child exploitation offenses in this District. The harm to the victims, particularly Jane Doe 1, cannot be overstated.

  Kosicki maintained stable employment and strong personal ties in his daily life. He was a productive member of his community. All the while, he engaged in nearly constant sexual exploitation of a child in his family and the children of family and friends. He violated the trust of other parents and manipulated young children for his own sexually deviant desires. He repeatedly exploited Jane Doe 1 not only for his own sexual purposes but for others' interests as well. He placed her in significant jeopardy of physical harm, including exposure to sexually transmitted diseases, and long-term psychological distress. He stole the innocence of childhood and left untold scars in the wake of his destruction.

  The sentence imposed in this action should be substantial in order to adequately reflect the

seriousness of the current offenses, promote respect for the law, provide just punishment for the offense, deter further criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. A significant sentence of imprisonment reflect the seriousness of the offenses, as well as promote respect for the law and give clear notice that child sex offenders will be punished harshly. The sentence should serve as a deterrent for further criminal conduct and protect the public from further crimes by Kosicki. With regard to avoiding sentencing disparities, as noted above, Kosicki is nearly peerless.

In considering the kinds of sentences available, the statutory framework outlined above cannot be overlooked. The lowest end of the applicable Guideline range is life.

## CONCLUSION

Kosicki's conduct has caused significant emotional pain and suffering for the victims and their families identified and given notice to this point and he should be punished for that harm. The investigation continues, with regard to identifying additional accomplices.

For the reasons set forth herein, the United States respectfully requests the Court to impose a significant term of imprisonment followed by a life term of Supervised Release.

Respectfully submitted,

JOHN E. KUHN, JR.
United States Attorney

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 625-7065
Fax (502) 582-5097

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent by electronic means through the Court's ECF system on January 29, 2016, to defense counsel.

    /s/ *Jo E. Lawless*
    Jo E. Lawless
    Assistant United States Attorney